Dickson's Adm'r v. Luman, &c.

. . . . .

Case 104—PETITION EQUITY—January 7.

## Dickson's Adm'r v. Luman, &c.

APPEAL FROM LEWIS CIRCUIT COURT.

1. One who mortgages his property to secure the debt of another is a surety within the meaning of the statute, which provides that "no person shall be bound as the surety of another by the act of an agent unless the authority of the agent is in writing, signed by the principal," and he is therefore not bound by such a mortgage signed by another for him upon his mere verbal authority.

    In this case the mortgage held not to be binding on the surety was not acknowledged.

2. Signing of Surety's Name by Another.—The fact that a surety is present and assents to the signing of his name by another does not bind him in the absence of written authority.

A. M. J. COCHRAN and EDWARD W. HINES for appellant.

1. The signing of the names of the sureties *in their presence* and by their direction is to be regarded as their act and not as the act of an agent; and, therefore, sec. 20 of chap. 22, Gen. Stats., does not apply. (Gardner v. Gardner, 5 Cush., 483; Hughes v. Commonwealth, 89 Ky., 227.)

   The question does not seem to have been carefully considered in Billington v. Commonwealth, 79 Ky., 400, and the court is asked to reconsider that case.

2. Even if appellees are not personally liable, the mortgage created a lien which should have been enforced.

   Verbal authority to another to sell land is sufficient. (Gen. Stats., chap. 22, sec. 1; Talbot v. Bowen, 1 Mar., 437; Irvin v. Thompson, 4 Bibb., 295.)

   And *a fortiori* is such authority sufficient to create a lien on land. (Jones on Mortgages, vol. 1, sec. 81.)

   The fact that the mortgagors may have supposed they were binding themselves personally can not affect the validity of the mortgage, the mortgage being a security in addition to and independent of the personal liability of the mortgagors.

3. One who mortgages his property to secure the debt of another is not a "surety" within the meaning of the statute. (Hobson v. Hobson's Ex'or, 8 Bush, 665.)

4. The clerk's certificate of acknowledgment was appended to the mortgage at the time appellees authorized their brother to sign it for them, and they were bound to know that the mortgagee would rely upon the certificate and refrain from making any inquiry as to the genuineness of the signatures or as to the authority by which they had been made; and as the money was advanced upon the faith of the certificate, appellees are estopped to deny that they signed and acknowledged the mortgage. (Rudd v. Matthews, 79 Ky., 479.)

WM. J. HENDRICK and R. REID ROGERS for appellees.

1. Reading the note and mortgage together the mortgage is shown by intent of the parties to be merely collateral to the note, and the note being void the mortgage is also void. (Cotton's Trustee v. Graham, 84 Ky., 673; Kaufman v. Sayre, 2 B. Mon., 205; Hawkins v. King, 2 Mar., 108; Bridge Co. v. Douglass, 12 Bush, 704; Jones on Mortgages, sec. 71.)

2. One who executes a mortgage upon his property to secure the debt of another is a "surety" within the meaning of sec. 20 of chap. 22, Gen. Stats., and if his name is signed to the mortgage by another as his agent, he is not bound unless the authority of the agent is in writing.

3. The mortgage being wholly void there can be no estoppel. (Manu-
facturing Co. v. Elizabeth, 42 N. J. L., 249 ; Brightman v. Hicks,
108 Mass., 246 ; Insurance Co. v. Maury, 96 U. S., 544 ; Bigelow on
Estoppel, 552 ; Herman on Estoppel, 906 ; 56 N. H., 272 ; 117
Mass., 241.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In pursuance of a previous understanding between
them, James Dickson loaned to H.. R. Luman five hun-
dred and fifty dollars, receiving therefor a promissory
note already executed by him, and purporting to have
been likewise duly executed by E. P., C. A. and J. E.
Luman. There was at the same time delivered to Dick-
son a mortgage previously executed and acknowledged
by H. R. Luman, and purporting to have been likewise
executed and acknowledged by his three brothers, on a
tract of land in which each of the four persons had an
equal and undivided interest.

It appears that H. R. Luman was principal in the note,
and as such received and appropriated to his own use the
borrowed money, his brothers being merely sureties. It
further appears that neither one of the sureties in person
signed, or in writing authorized H. R. Luman to sign, his
name to either the note or mortgage, though they admit
he did so in their presence and upon their verbal author-
ity. Nor, though a deputy clerk so certified, did either
one of the sureties in fact ever acknowledge the mortgage.
On the contrary that officer, as he testified, wrote and
officially signed the certificate of their acknowledgment
before either of the sureties ever saw the mortgage, or
their names were subscribed to it. Sec. 20, chap. 22,
Gen. Stats., provides that "no person shall be bound as
the surety of another by the act of an agent unless the
authority of the agent is in writing, signed by the prin-

cipal; or if the principal do not write his name, then by his sign or mark, made in the presence of at least one credible attesting witness." And, according to the proper and uniform construction of that statute by this court, the sureties in this case clearly can not be held liable on the note, for amount of which personal judgment is sought against each of them. See Ragan v. Chenault, 78 Ky., 545; Billington v. Commonwealth, 79 Ky., 400; Simpson v. Commonwealth, 89 Ky., 412. In the first mentioned of those cases it was held that even a subsequent parol ratification or admission of liability by the surety will not bind him, if he was not already liable in meaning of the statute. And in the other two cases it was substantially held that the fact of actual presence and assent of the surety to his name being signed by another will not make him liable in the absence of written authority.

And if the sureties are not in the first instance bound by the note, it would at the outset seem unaccountable how a lien on their property for satisfaction of it can exist in virtue of an attempted mortgage that, though part of the same transaction, was never executed by them in person, nor authorized in writing to be executed for them by another. For there is no reason why the statute does not as well and fully apply to the act of an agent in signing without written authority the name of a surety to a mortgage, whereby his property becomes liable, as in signing his name without written authority to a note, for satisfaction of which his property becomes just as certainly and incontestably bound.

The language of the statute is comprehensive enough to include a mortgage upon property of a surety made to

secure payment of a debt of his principal; and, looking to the purpose of it, we think it should be applied to every act of an agent having the effect to bind either the property or person of a surety. And such has been the practical interpretation of the statute by this court. In Ragan v. Chenault, 78 Ky., 547, is this language: "The mischief intended to be provided against by this statute was to prevent the use of one's name as surety in obligations, so as to fix upon him a liability, with no other evidence than alleged parol authority given the principal or some other person to sign the surety's name." And as said in Billington v. Commonwealth, 79 Ky., 401: "The language of the section seems to be imperative and without exception, that in all cases of suretyship, in order that the act of one may bind another as surety, such act must be done under written authority from the one held to answer as surety."

But counsel refers to sec. 1, chap. 22, General Statutes, where it is provided, "that no action shall be brought to charge any person upon any contract for the sale of land, or any lease thereof, for a longer term than one year, unless the contract be in writing, signed by the party to be charged therewith, or by his authorized agent;" and argues that because an agent may, under that statute, though acting under mere verbal authority, bind his principal, he may also, upon mere verbal authority, sign the name of a surety to a mortgage and bind his property for the debt of another.

That statute, it seems to us, even if applicable to mortgages at all, does not relate to acts of an agent having effect to bind the person or property of a mere surety. But sec. 20, already quoted, which is exceptional in its

nature, alone applies to this case, and we think was intended to be not at all restrictive, but comprehensive enough to apply to mortgages or other incumbrances upon the property of a surety created, or attempted to be created, for the purpose of satisfying or answering for the debt of another.

Wherefore the judgment dismissing the action as to the sureties in this case is affirmed.